[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13295

_____

D.C. Docket No. 0:10-cr-60332-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ELLISA MARTINEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 27, 2013)

Before CARNES, Chief Judge, BLACK, Circuit Judge, and RESTANI,* Judge.

PER CURIAM:

_____

\* The Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by designation.

Ellisa Martinez appeals her conviction under 18 U.S.C. § 875(c) for knowingly transmitting a threatening communication.  We affirm.

## I. FACTS AND PROCEDURAL HISTORY

On November 10, 2010, talk-show host Joyce Kaufman at WFTL radio received an anonymous email form-response stating:

> Dear Ms. Kaufman I was so thrilled to see you speak in person for congressman elect west.  I was especially exited [sic] to hear you encourage us to exercise our second amendment gun rights.  I felt your plan to organize people with guns in the hills of Kentucky and else where was a great idea.  I know that you know one election is not enough to take our country back from the illegal aliens, jews, muslims, and illuminati who are running the show.  I am so glad you support people who think like me.  i'm planning something big around a government building here in Broward County, maybe a post office, maybe even a school, I'm going to walk in and teach all the government hacks working there what the 2nd amendment is all about.  Can I count on your help?  you and those people you know in Kentucky?  we'll end this year of 2010 in a blaze of glory for sure.  thanks for your support mrs kaufman.  what does sarah say, don't retreat, reload!  let's make headlines girl!

Several hours after this email was sent, an anonymous woman called WFTL.  She told station officials that her husband had sent the prior email, that he was mentally ill, and that he was now planning to open fire at a nearby school.  The anonymous woman implored the station to broadcast a plea asking her husband not to carry out the shooting.

These communications prompted the Pembroke Pines Police Department to institute a "Code Red" lockdown on all Broward County schools.  The Police

2

Department also shut down several other public buildings, requiring officers to work overtime securing the facilities.  Ultimately, however, no shooting occurred and the anonymous woman sent no further communications.

Soon after these events, investigators discovered that both anonymous communications were sent by the same person:  Ellisa Martinez.  Initially, Martinez denied any involvement in or knowledge of the incident.  However, once a grand jury indicted her for making a true threat in violation of 18 U.S.C. § 875(c), and once the district court denied her motion to dismiss the indictment, Martinez pleaded guilty.

In pleading guilty, Martinez reserved the right to appeal the denial of her motion to dismiss the indictment on the following issues:  (1) whether the indictment was insufficient because it did not allege Martinez subjectively intended to convey a threat to injure others; and (2) whether § 875(c) was unconstitutionally overbroad because it did not require the Government to prove the speaker subjectively intended her statements to constitute a threat. Concurrent with her guilty plea, Martinez and the Government executed and filed a factual stipulation.  That stipulation recounted the legal elements of an offense under § 875(c) and detailed the factual basis of Martinez's crime.  Martinez conceded that she knowingly and willfully sent the November 10th email, and that "the email contained language that an objectively reasonable jury could find

3

beyond a reasonable doubt to be a serious expression of an intent to injure another person." At her change-of-plea hearing, Martinez acknowledged she understood the plea agreement, and the Government read the parties' factual stipulation aloud in court.

After the district court accepted Martinez's guilty plea, the court ultimately ordered Martinez to pay the Police Department $5,350.89 in restitution for the costs incurred securing and safeguarding the schools and students in Broward County, Florida, as a result of her offense. Martinez appealed.

## II. THE FIRST AMENDMENT AND TRUE THREATS

Pursuant to her conditional guilty plea, Martinez brings two constitutional challenges under the First Amendment. First, Martinez contends her indictment was constitutionally deficient under *Virginia v. Black*, 538 U.S. 343, 123 S. Ct. 1536 (2003), because it did not allege she subjectively intended to convey a threat to injure others. Second, Martinez argues that, if § 875(c) does not require subjective intent, the statute is unconstitutionally overbroad.[1]

### A. *True Threats and Intent*

While the First Amendment generally prohibits the Government from restricting speech based on its message or viewpoint, *Ashcroft v. ACLU*, 535 U.S. 564, 573, 122 S. Ct. 1700, 1707 (2002), the First Amendment's free-speech

---

[1] We review constitutional challenges de novo. *United States v. Acuna-Reyna*, 677 F.3d 1282, 1284 (11th Cir. 2012).

protections are not absolute, *see Chaplinsky v. New Hampshire*, 315 U.S. 568, 571, 62 S. Ct. 766, 769 (1942). In certain narrowly drawn categories, the Government may permissibly restrict speech on the basis of content. *United States v. Stevens*, 130 S. Ct. 1577, 1584 (2010). These categories of unprotected speech do not require case-by-case balancing because the harms they impose "so overwhelmingly outweigh[]" any First Amendment concerns that the "balance of competing interests is clearly struck." *New York v. Ferber*, 458 U.S. 747, 763–64, 102 S. Ct. 3348, 3358 (1982).

"True threats" are one such category of unprotected speech. *United States v. Alvarez*, 132 S. Ct. 2537, 2544 (2012) (plurality opinion). Although statutes penalizing speech "must be interpreted with the commands of the First Amendment clearly in mind," *Watts v. United States*, 394 U.S. 705, 707, 89 S. Ct. 1399, 1401 (1969), objective threats of violence contribute nothing to public discourse and enjoy no First Amendment protection, *see R.A.V. v. City of St. Paul*, 505 U.S. 377, 382–83, 112 S. Ct. 2538, 2542–43 (1992). The critical issue for the true threats doctrine is distinguishing true threats from mere political hyperbole; while the former are outside the First Amendment, the latter is entitled to full constitutional protection. *See Watts*, 394 U.S. at 707–08, 89 S. Ct. at 1401–02.

Martinez argues that the Supreme Court's decision in *Virginia v. Black* draws the distinction between true threats and protected speech based on the

5

speaker's subjective intent.  Relying on Ninth Circuit precedent, Martinez contends *Black* redefined true threats to require proof the speaker subjectively intended to threaten listeners.  *See United States v. Bagdasarian*, 652 F.3d 1113, 1116 (9th Cir. 2011) (holding that a threat—even one "objective observers would reasonably perceive . . . as a threat of injury or death"—cannot be prosecuted unless the speaker subjectively intended the speech to be a threat).  Therefore, Martinez claims, her indictment was constitutionally insufficient because it did not allege she acted with the subjective intent to threaten.

### 1. Origins of the True Threats Doctrine

The true threats doctrine took shape in *Watts v. United States*.  *See* 394 U.S. at 705–08, 89 S. Ct. at 1399–1402.  In *Watts*, the Supreme Court reversed the conviction of a man charged with knowingly and willfully threatening the President under 18 U.S.C. § 871(a), based on the following statements:

> They always holler at us to get an education.  And now I have already received my draft classification as 1-A and I have got to report for my physical this Monday coming.  I am not going.  If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.  They are not going to make me kill my black brothers.

*Id.* at 705–06, 89 S. Ct. at 1400–01 (internal quotation marks omitted).

Although the Court acknowledged that true threats were not protected expression, the Court nonetheless held that Watts's statements were mere "political hyperbole."  *Id.* at 707–08, 89 S. Ct. at 1401.  When taken in context, the Court

6

could not see how Watts's statements could be interpreted as anything other than "a kind of very crude offensive method of stating a political opposition to the President." *Id.* at 708, 89 S. Ct. at 1402 (internal quotation marks omitted).

Importantly, the Court reached this conclusion based on the objective characteristics of the speech and the context in which it was delivered—the Court did not speculate as to the speaker's subjective mental state. *See id.* For example, the Court looked to where the statement was made:  in public during a group political debate. *Id.* Additionally, the Court looked to the nature of the statement: it was expressly conditional upon Watts's conscription into the military—an event he vowed would never occur. *Id.* at 707–08, 89 S. Ct. at 1401–02. Finally, the Court looked to the reaction of those in attendance:  listeners as well as the speaker "laughed after the statement was made." *Id.*

Following *Watts*, most federal courts of appeals defined true threats according to an objective standard. *See Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 622 (8th Cir. 2002) (en banc) (noting that, while some courts applied a reasonable-speaker standard and others a reasonable-listener standard, "[a]ll the courts to have reached the issue . . . consistently adopted an objective test" for true threats). Between *Watts* in 1969 and *Black* in 2003, this Court in particular consistently applied an objective, reasonable-person test when distinguishing true threats from protected speech. *See United States v. Callahan*, 702 F.2d 964, 965

7

(11th Cir. 1983); *United States v. Bozeman*, 495 F.2d 508, 510 (5th Cir. 1974).[2]

Under that objective standard, a true threat is a communication that, when taken in context, "would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *United States v. Alaboud*, 347 F.3d 1293, 1296–97 (11th Cir. 2003) (internal quotation marks omitted).

   *2.* Virginia v. Black *and True Threats*

   Despite this history and precedent, Martinez contends *Black* altered the *Watts* framework for true threats and tacitly overruled our case law defining true threats according to an objective standard. However, four circuits to address the issue have declined to adopt Martinez's reading of that decision. *See United States v. Elonis*, 730 F.3d 321, 332 (3d Cir. 2013) ("[W]e find that *Black* does not alter our precedent."); *United States v. Nicklas*, 713 F.3d 435, 440 (8th Cir. 2013) (joining the majority of circuits which have held that, in the wake of *Black*, § 875(c) does not require the Government to prove a defendant specifically intended his or her statements to be threatening); *United States v. Jeffries*, 692 F.3d 473, 479 (6th Cir. 2012); *United States v. White*, 670 F.3d 498, 508 (4th Cir. 2012) ("A careful reading of the requirements of § 875(c), together with the definition from *Black*, does not, in our opinion, lead to the conclusion that *Black* introduced a

---

   [2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

specific-intent-to-threaten requirement into § 875(c) and thus overruled our circuit's jurisprudence, as well as the jurisprudence of most other circuits, which find § 875(c) to be a general intent crime and therefore require application of an objective test in determining whether a true threat was transmitted."). *But see United States v. Cassel*, 408 F.3d 622, 633 (9th Cir. 2005) (holding that *Black* requires a subjective-intent analysis).

We agree with the Sixth Circuit that *Black* did not work a "sea change," tacitly overruling decades of case law by importing a requirement of subjective intent into all threat-prohibiting statutes. *Jeffries*, 692 F.3d at 479; *see also Elonis*, 730 F.3d at 332 ("*Black* does not clearly overturn the objective test the majority of circuits applied to § 875(c).").

In *Black*, the Supreme Court addressed a state statute making it a crime to burn a cross with the "intent of intimidating any person or group." *See* 538 U.S. at 347–48, 123 S. Ct. at 1541 (internal quotation marks omitted). Although the Court divided in its rationale, a majority of the Court reaffirmed the basic holding of *Watts* and other cases that true threats are not protected under the First Amendment. *See id.* at 358–60, 123 S. Ct. at 1547–48. The Court defined true threats as "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id.* at 359, 123 S. Ct. at 1548. According to a

9

plurality of the Court, because the statute made the act of cross burning prima facie evidence of intent to intimidate, it effectively rendered cross burning a strict-liability offense. *See id.* at 365, 123 S. Ct. at 1550–51 (plurality opinion). And, without *any* mens rea requirement, the statute covered more than just true threats and "create[d] an unacceptable risk of the suppression of ideas." *Id.* (internal quotation marks omitted).

Contrary to Martinez's argument, *Black* did not import a subjective-intent analysis into the true threats doctrine. Rather, *Black* was primarily a case about the overbreadth of a specific statute—not whether all threats are determined by a subjective or objective analysis in the abstract. *See Jeffries*, 692 F.3d at 479–80 (observing that *Black* "says nothing about imposing a subjective standard on other threat-prohibiting statutes, and indeed had no occasion to do so: the Virginia law itself required subjective 'intent.' The problem in *Black* thus did not turn on subjective versus objective standards for construing threats. It turned on overbreadth—that the statute lacked any standard at all"). When interpreting a statute like § 875(c), which articulates no explicit mens rea requirement and is therefore treated as a general-intent crime, *see United States v. Duran*, 596 F.3d 1283, 1292 (11th Cir. 2010), *Black* leaves our analysis and objective standard unaltered.

*Black*'s definition of true threats is fully consistent with a general-intent standard examining only the objective characteristics of the speech act. *See White*, 670 F.3d at 509. General-intent crimes require only that the defendant actually intend to perform the prohibited act; she need not subjectively intend the precise purpose or results of the crime. *Id.* at 508; *see also Carter v. United States*, 530 U.S. 255, 268, 120 S. Ct. 2159, 2168 (2000). Similarly, *Black* defined true threats as those statements a speaker means to communicate—i.e., knowingly communicate—that contain a serious expression of violent intent. *See Black*, 538 U.S. at 359, 123 S. Ct. at 1548 (majority opinion). However, the speaker need not subjectively intend her statement to be a threat, in much the same way she need not subjectively intend to violate the law or "actually intend to carry out the threat."[3] *See id.*

The Supreme Court's definition of intimidation buttresses our interpretation of true threats. *Black* defined "intimidation" as a "type of true threat" directed with the intent—i.e., the specific, subjective intent—to place listeners in fear of bodily harm or death. *See id.* at 360, 123 S. Ct. at 1548. By defining intimidation to

---

[3] Moreover, objective standards are not unusual in the free-speech context. *See, e.g.*, *White*, 670 F.3d at 511; *see also FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 468–69, 127 S. Ct. 2652, 2666 (2007) (refusing to base First Amendment doctrine on a speaker's subjective motivation); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 927–29, 102 S. Ct. 3409, 3433 (1982) (analyzing the objective circumstances surrounding the speech to determine how it "might have been understood" by listeners); *Norwell v. City of Cincinnati*, 414 U.S. 14, 16, 94 S. Ct. 187, 188 (1973) (holding that a speaker's subjective motivation was not relevant to whether his speech qualified as "abusive language or fighting words").

include a subjective-intent analysis, *Black* indicated that the general class of true threats does not require such an inquiry into the speaker's subjective mental state. After all, intimidation is but one type of true threat—a true threat delivered with a particular, subjectively held intent. *See id.* (suggesting speech qualifies as intimidation when it is "*intended* to create a pervasive fear in victims that they are a target of violence" (emphasis added)). But explicitly requiring subjective intent for one discrete type of true threat makes little sense if the Court intended *all* true threats to require such intent.

Finally, we find the Third Circuit's recent opinion in *Elonis* persuasive. In rejecting the same reading of *Black* that Martinez urges on us, the Third Circuit clearly and precisely explained why that decision did not alter the well-established understanding of the true threats doctrine. *See Elonis*, 730 F.3d at 327–32. Particularly noteworthy is the Third Circuit's insight that "[l]imiting the definition of true threats to only those statements where the speaker subjectively intended to threaten would fail to protect individuals from the fear of violence and the disruption that fear engenders, because it would protect speech that a reasonable speaker would understand to be threatening." *Id.* at 330 (internal quotation marks omitted).

Accordingly, we hold that *Black* does not require a subjective-intent analysis for all true threats. *Id.* at 332 ("*Black* does not say that the true threats exception

12

requires a subjective intent to threaten").  Knowingly transmitting the threat makes the act criminal—not the specific intent to carry it out or the specific intent to cause fear in another.  *United States v. Fuller*, 387 F.3d 643, 646 (7th Cir. 2004) (citing *United States v. Kelner*, 534 F.2d 1020, 1025 (2d Cir. 1976)).  Therefore, when the Government shows that "a reasonable person would perceive the threat as real," a true threat may be punished and "any concern about the risk of unduly chilling protected speech has been answered."  *Jeffries*, 692 F.3d at 478.

B.  *Overbreadth and § 875(c)*

Next, Martinez argues that if subjective intent is not required for prosecution under § 875(c), the statute is unconstitutionally overbroad.  Under the First Amendment, a statute is overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Stevens*, 130 S. Ct. at 1587 (internal quotation marks omitted).  In making this determination, we first construe the statute so that its meaning is clear.  *United States v. Williams*, 553 U.S. 285, 293, 128 S. Ct. 1830, 1838 (2008).  We then determine whether the statute, as construed, "criminalizes a substantial amount of protected expressive activity."  *Id.* at 297, 128 S. Ct. at 1841.

After conducting this analysis, we conclude Martinez's overbreadth claim is meritless.  In its entirety, § 875(c) provides:

> Whoever transmits in interstate or foreign commerce any
> communication containing any threat to kidnap any person or any

13

threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 875(c).

The actus reus of the statute is transmitting a threat—that is, a true threat. *See White*, 670 F.3d at 508.  A true threat is determined from the position of an objective, reasonable person, *see Alaboud*, 347 F.3d at 1296–97, unless a particular offense involves "intimidation," *see Black*, 538 U.S. at 359–60, 123 S. Ct. at 1548. Section 875(c), however, is silent as to mens rea, requiring neither an intent to place the victim in fear of bodily harm or death, nor any other showing of specific intent.  *See United States v. Francis*, 164 F.3d 120, 122 (2d Cir. 1999) ("There is nothing in the language or legislative history of Section 875(c) suggesting that Congress intended it to be a specific-intent crime.").

As a result, § 875(c) is a general-intent offense that requires the Government to show (1) the defendant transmitted a communication in interstate or foreign commerce, (2) the defendant transmitted that communication knowingly, and (3) the communication would be construed by a reasonable person as a serious expression of an intent to inflict bodily harm or death.  *Cf. Callahan*, 702 F.2d at 965.  Section 875(c) "does not require the government to prove a defendant specifically intended his or her statements to be threatening."  *Nicklas*, 713 F.3d at 440.

14

Construed this way, § 875(c) does not sweep up a "substantial amount of protected expressive activity." *See Williams*, 553 U.S. at 297, 128 S. Ct. at 1841. To the contrary, because we construe the statute as applying to true threats—and *only* true threats—§ 875(c) on its face criminalizes no protected expressive activity. After all, true threats fall "outside the First Amendment," *R.A.V.*, 505 U.S. at 388, 112 S. Ct. at 2546, since they are "so intertwined with violent action that" they "essentially become conduct rather than speech," *Francis*, 164 F.3d at 123, inflicting injury on the listener "'by their very utterance,'" *Jeffries*, 692 F.3d at 480 (quoting *Chaplinsky*, 315 U.S. at 572, 62 S. Ct. at 769).[4]

Thus, unlike the statute in *Black*, § 875(c) does not permit a jury to convict any time "defendants exercise their constitutional right not to put on a defense," nor does it permit the Government "to arrest, prosecute, and convict a person based solely on" protected expression. *See* 538 U.S. at 365, 123 S. Ct. at 1550–51 (plurality opinion). While cross burning can receive protection under the First Amendment in certain instances, *see id.* at 366, 123 S. Ct. at 1551, true threats, however communicated, are categorically not protected under the First Amendment, *see Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 773, 114 S.

---

[4] Our construction of § 875(c) does not bar defendants from bringing as-applied challenges if prosecuted for speech that does not constitute a true threat. *Cf. Broadrick v. Oklahoma*, 413 U.S. 601, 615–16, 93 S. Ct. 2908, 2918 (1973). But Martinez has not brought an as-applied claim—and for good reason. In the factual stipulation supporting her plea agreement, Martinez admitted sending her threatening email "willfully," which is to say, she "voluntarily and intelligently" made her threat with "an apparent determination to carry [it] out." *Pilkington*, 583 F.2d at 747. Martinez has no claim that § 875(c) is unconstitutional as applied to her.

15

Ct. 2516, 2529 (1994). Accordingly, § 875(c) does not chill constitutionally protected speech, because § 875(c) on its face does not permit the Government to "prosecute—and potentially convict—somebody engaging only in lawful political speech at the core of what the First Amendment is designed to protect." *Black*, 538 U.S. at 365, 123 S. Ct. at 1551.

Martinez's argument that § 875(c) allows for the prosecution of a would-be Good Samaritan who mistakenly shouts "fire!" in a crowded theater fails for numerous reasons, not the least of which is that one imaginative hypothetical does not justify applying the "strong medicine" of the overbreadth doctrine. *See Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S. Ct. 2908, 2916 (1973). Like any other law, § 875(c) is not overbroad simply because litigants "can hypothesize some deterrent effect on protected speech." *See Shackelford v. Shirley*, 948 F.2d 935, 940 (5th Cir. 1991). Because invalidating § 875(c) on overbreadth grounds is a "last resort," *see Broadrick*, 413 U.S. at 613, 93 S. Ct. at 2916, we must, when possible, "construe the statute to avoid constitutional problems," *Ferber*, 458 U.S. at 769 n.24, 102 S. Ct at 3361 n.24.

In this case, we have construed § 875(c) in a manner that does not raise constitutional concerns. Because true threats are unprotected speech, and because our reading of § 875(c) limits that statute to true threats, Martinez has not demonstrated a "realistic danger" that § 875(c) will "significantly compromise

16

recognized First Amendment protections." *City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S. Ct. 2118, 2126–27 (1984).

Accordingly, we uphold the statute in the face of Martinez's overbreadth claim.[5]

## III. CONCLUSION

For the foregoing reasons, Martinez's conviction and the district court's order of restitution are **AFFIRMED**.

---

[5] We also affirm the district court's partial denial of Martinez's motion for reconsideration and its order imposing $5,350.89 in restitution.  Not only did Martinez herself initially recommend $7,567.51 in restitution, but the court also did not clearly err when it found—based on Martinez's factual stipulation—that her offense directly and proximately caused the Pembroke Pines Police Department's losses. *See United States v. Robertson*, 493 F.3d 1322, 1334 (11th Cir. 2007).  Moreover, contrary to Martinez's assertions, the restitution order did not include investigatory and prosecutorial costs.  Rather, the court expressly limited restitution to the costs of securing schools in the wake of Martinez's offense.

CARNES, Chief Judge, concurring in the result:

There is a difference between speech that is a true threat, which may be constitutionally banned, and speech that is just hot invective which cannot be. The majority opinion draws the line between those two types of speech using the decision in Virginia v. Black, 538 U.S. 343, 123 S.Ct. 1536 (2003), as its straight edge. Using the same straight edge, I might draw a different line. But I need not decide whether I would because the nature of the defendant's challenge to the statute before us makes it unnecessary to do so.

## I.

Martinez was convicted under 18 U.S.C. § 875(c), which criminalizes the transmission in interstate commerce of "any threat to injure the person of another." The indictment charged that she knowingly transmitted a communication that contained a threat to injure another person. She challenges the sufficiency of the indictment because of its failure to allege that she transmitted the threat with the intent to cause fear of bodily harm.

## II.

To the extent that Martinez's challenge is one of statutory interpretation, arguing that § 875(c) itself requires that the defendant have intended to cause the necessary fear, our decision in United States v. Alaboud, 347 F.3d 1293 (11th Cir. 2003), forecloses her position. The Alaboud decision held that what § 875(c)

18

requires is that the communication and the context in which it was made "would cause a reasonable person to construe it as a serious intention to inflict bodily harm," not that the defendant have intended to cause that result. Id. at 1297; see also id. ("[T]he offending remarks must be measured by an objective standard."); id. at 1297 n.3 (explaining that we have never specified whether we use a listener-based or speaker-based test, and instead have asked only how a reasonable person would construe the communication). We are bound by the Alaboud decision to hold that, as a matter of statutory interpretation, an intent to cause a fear of bodily harm is not required by § 875(c). And as a later panel we must adhere to that holding even if we think that the Alaboud panel may have overlooked the Black decision, which came out six months earlier but was not mentioned in Alaboud. See, e.g., Smith v. GTE Corp., 236 F.3d 1292, 1300–04 (11th Cir. 2001).

### III.

Martinez's challenge goes beyond statutory interpretation, however, and in that way slips the grip of the Alaboud decision. She contends that her indictment is invalid because the failure to require an intent to cause fear of bodily harm renders § 875(c) facially overbroad and unconstitutional on its face. The Alaboud Court decided not to address the constitutionality of the statute because the defendant had not raised that issue in the district court. See Alaboud, 347 F.3d at

19

1295 n.1.  Because Martinez did raise the issue in the district court, we must deal with it.

The majority rejects Martinez's facial attack on § 875(c) because it concludes that the Supreme Court's Black decision "does not require a subjective-intent analysis for true threats."  Maj. Op. at 7, 10–15.  While I have my doubts about the majority's reading of Black, those doubts do not affect the result in this case because Martinez's sole constitutional challenge to § 875(c) is that the provision is facially overbroad.  It is not.[1]  For that reason, I feel it is unnecessary to take sides in the existing circuit split on whether Black requires a subjective-intent analysis for true threats.  See Maj. Op. at 8–9.  Even assuming that it does, Martinez cannot prevail on her facial challenge to § 875(c).

A facial challenge that is based on some ground other than First Amendment overbreadth can succeed only "by establishing that no set of circumstances exists under which the Act would be valid, i.e., that the law is unconstitutional in all of its applications."  Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449, 128 S.Ct. 1184, 1190 (2008) (quotation marks and alteration omitted); see also Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott, 717 F.3d 851, 863 (11th Cir. 2013) (holding that to succeed on a facial attack "'the challenger

---

[1] From her motion to dismiss the indictment in the district court through her initial brief to this Court, Martinez has never raised an as applied challenge to the statute.

20

must establish that no set of circumstances exists under which the Act would be valid'") (quoting United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100 (1987)).

A First Amendment overbreadth challenge, however, is different. See, e.g., Virginia v. Hicks, 539 U.S. 113, 118, 123 S.Ct. 2191, 2196 (2003) ("The First Amendment doctrine of overbreadth is an exception to our normal rule regarding the standards for facial challenges."). An overbreadth challenge does not require a showing that there is no set of circumstances in which the statute could be applied constitutionally, but it does require a showing that a "substantial number of [a statute's] applications are unconstitutional, judged in relation to [its] plainly legitimate sweep." Wash. State Grange, 552 U.S. at 449 n.6, 128 S.Ct. at 1190 n.6 (quotation marks omitted). The difference is between having to show that all applications of the statute are unconstitutional and having to show that a substantial number of them are. It is still a difficult showing to make, and the burden of making it is on the challenger.

The Supreme Court has cautioned that we should "not apply the strong medicine of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law." Id. (quotation marks omitted) (citing N.Y. State Club Ass'n v. City of New York, 487 U.S. 1, 14, 108 S.Ct. 2225, 2234 (1988)). In its N.Y. State Club decision, the Supreme Court refused to strike down

a law on overbreath grounds because there was no definitive showing of the actual amount of its allegedly unconstitutional applications.  The Court explained:

> To succeed in its challenge, appellant must demonstrate from the text of Local Law 63 and from actual fact that a substantial number of instances exist in which the Law cannot be applied constitutionally. Yet appellant has not identified those clubs for whom the antidiscrimination provisions will impair their ability to associate together or to advocate public or private viewpoints.  No record was made in this respect, we are not informed of the characteristics of any particular clubs, and hence we cannot conclude that the Law threatens to undermine the associational or expressive purposes of any club, let alone a substantial number of them.  We therefore cannot conclude that the Law is substantially overbroad and must assume that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.

N.Y. State Club, 487 U.S. at 14, 108 S.Ct. at 2234–35 (quotation marks omitted).

Similarly, in this case Martinez has made no showing "from the text of [§ 875(c)] and from actual fact that a substantial number of instances exist in which [§ 875(c)] cannot be applied constitutionally."  Id., 108 S.Ct. at 2234.  For that reason, we "cannot conclude that [§ 875(c)] is substantially overbroad and must assume that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations" in which its application would be unconstitutional.  Id., 108 S.Ct. at 2235 (quotation marks omitted).  That is what the Supreme Court has told us to do.

While the Supreme Court has acknowledged that substantial overbreadth is "not readily reduced to an exact definition," Members of the City Council of L.A.

22

v. Taxpayers for Vincent, 466 U.S. 789, 800, 104 S.Ct. 2118, 2126 (1984), it has declined to find a statute overbroad when it was unlikely that the amount of protected expression falling within the scope of the statute would "amount to more than a tiny fraction of the materials within the statute's reach." New York v. Ferber, 458 U.S. 747, 773, 102 S.Ct. 3348, 3363 (1982). That is the situation here. Martinez refers to a rare, almost unicornical category of speech communicated by a speaker who "acts with innocent intent, but negligently conveys a message that others [reasonably] find to be threatening." Appellant's Br. at 20. More than a law school exam hypothetical is required. The analysis must partake of reality and a substantial amount of overbreadth must be shown.

The Supreme Court has instructed:

[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge. On the contrary, the requirement of substantial overbreadth stems from the underlying justification for the overbreadth exception itself — the interest in preventing an invalid statute from inhibiting the speech of third parties who are not before the Court.

City Council of L.A., 466 U.S. at 800, 104 S.Ct. at 2126 (footnote omitted). The Court emphasized that "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." Id. at 801, 104 S.Ct. at 2126. And in making that determination we are guided by the

admonition that the "application of the overbreadth doctrine is 'strong medicine' that should be used 'sparingly and only as a last resort.'" Fla. Ass'n of Prof'l Lobbyists, Inc. v. Div. of Legislative Info. Servs. of the Fla. Office of Legislative Servs., 525 F.3d 1073, 1079 (11th Cir. 2008) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916 (1973)).

This is not one of those rare, last resort cases where we must use the strong medicine of overbreadth doctrine. Section 875(c)'s restriction on speech is itself significantly restricted by the objective requirement that a reasonable person would believe from the speech and its circumstances that the defendant intended to harm another. See Alaboud, 347 F.3d at 1297 (holding that the government must prove that a reasonable person would "construe [the communication] as a serious expression of an intention to inflict bodily harm") (quotation marks omitted). Given that requirement — and assuming Martinez is right that the First Amendment requires proof of the speaker's subjective intent to threaten — there would be two categories of cases within the scope of § 875(c). The constitutional application category would include all of the cases in which a reasonable person would believe that the defendant intended to cause fear of bodily harm and she did actually intend that. The unconstitutional application category would include only the cases in which a reasonable person would believe that the defendant intended to cause fear of bodily harm but she did not actually intend that. Martinez has not

24

shown that the unconstitutional category cases are substantial in relation to the constitutional category ones.  As a result, even assuming that the First Amendment requires proof of subjective intent, Marinez's overbreadth challenge fails.  See Broadrick, 413 U.S. at 615, 93 S.Ct. at 2918.

For this reason, I agree with my colleagues that Martinez's conviction is due to be affirmed.[2]

---

[2] I also agree with them that the district court's restitution order is due to be affirmed, although I would apply plain error review and hold that in light of our decision in United States v. Washington, 434 F.3d 1265 (11th Cir. 2006), the district court did not plainly err.