**John KRUKOWSKI, Plaintiff,**

v.

**Patricia SWORDS, State's Attorney for the Judicial District of Tolland, in her official capacity; Michael Greenier, in his individual capacity and in his official capacity as a Vernon Police Officer; Donald Skewes, in his individual capacity and in his official capacity as a Vernon Police Officer; and Town of Vernon, Defendants.**

Civil No. 3:97cv0006 (AWT).

United States District Court,
D. Connecticut.

July 9, 1998.

Jon L. Schoenhorn, Law Offices of Jon L. Schoenhorn, Hartford, CT, for John Krukowski.

Timothy J. Sugrue, Mitchell S. Brody, David M. Kutzner, Office of the Chief State's Attorney, Rocky Hill, CT, for Patricia Swords.

Michael J. Lefebvre, Michael J. McAndrews, McAndrews & Lefebvre, Hartford, CT, for Michael Greenier and Donald Skewes.

Jerome David Levine, Vernon, State's Atty, Vernon, CT, Michael J. Lefebvre, Michael J. McAndrews, McAndrews & Lefebvre, Hartford, CT, for Town of Vernon.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

THOMPSON, District Judge..

In June 1994, plaintiff John Krukowski ("Krukowski") was arrested by members of the Vernon, Connecticut police department and charged with risk of injury to a minor under Connecticut General Statutes § 53–21. The state of Connecticut alleged six counts of risk of injury, premised upon a series photographic and videotaping sessions Krukowski conducted with an aspiring model in January 1994, when the girl was fifteen years old. After the state prosecution was resolved in his favor, Krukowski bought this federal civil rights action in which he seeks, *inter alia*, to enjoin the future application of § 53–21 against him for conducting similar modeling sessions with minor models on the grounds that such application violates the First and Fourteenth Amendments to the United States Constitution.

Presently before the court are cross-motions for summary judgment directed to Krukowski's request for declaratory and injunctive relief contained in Count Two of the Amended Complaint, which is asserted against defendants Patricia Swords, State's Attorney for the Judicial District of Tolland ("Swords"), and the Town of Vernon.[1] For the reasons set forth below, the defendants' motion for summary judgment[2] is being denied and the plaintiff's motion for summary judgment is being granted.

## I. BACKGROUND

### A. Relevant Facts

Most of the relevant facts in this case have been stipulated to and are contained in the set of stipulated facts filed by the parties. *See* Doc. # 27. These stipulated facts, as well as the court's observations concerning the photographs, videotape and other exhibits submitted by the parties, are summarized below.

In early January 1994, Melissa Deane ("Deane"), who was born on August 22, 1978, hired Krukowski to be her agent in the modeling business.[3] Krukowski's services were procured by Deane's mother, Marie Terry Riccio ("Riccio"), who, on January 5, 1994, signed a "Minor Release Form" indicating Deane's age and giving Krukowski authority to act as Deane's agent. *See* Notice Re: Exhibits for Preliminary Injunction Hearing [doc. # 26].. On this same date, Deane also completed and signed a "Models Bio–Data Form", in which Deane was asked to describe how important various types of modeling were to her. *See id.* On a scale of one to ten, with ten indicating areas of greatest interest, Deane responded as follows: Fash-

---

1. The present ruling has no bearing upon defendants Michael Greenier and Donald Skewes, who are named only in Count One of the Amended Complaint. In Count One, Krukowski alleges a deprivation of his First and Fourth Amendment rights, in violation of 42 U.S.C. § 1983.

2. By a memorandum filed March 27, 1998, the Town of Vernon joined Swords' motion for summary judgment as to Count Two of the Amended Complaint.

3. Krukowski later told Vernon police detectives that, in early 1994, he was starting a modeling agency and trying to find suitable models. At that time, Krukowski also ran a business known as "Asian Mystique Connection" which is variously described as a correspondence service and as a dating service.

ion–6; High Fashion–0; Runway–3; Character–7; Bathing Suit–9; Lingerie–8; Nude–0; Semi–nude–6; and Art/Figure–6. *See id.*

On January 13, 1994, Krukowski, Deane and Riccio also signed an "Outline of semi nude modeling test for Melissa Deane", which provided in part as follows:

This test is to test Melissa['s] ability to work as a model in a semi nude environment under actual working conditions. The end result of this test will be Portfolio Photographs for the model ... The test will consist of 2 locations and styles of shooting. Location 1 will be in a home environment with assorted Lingerie. [T]he flavor will be to create some sexy catalog shots and boudoir. Location 2 will be in a studio and will reproduce a jeans advertisement ... The photographer Paul Duckett will be in charge of the shoot and John Krukowski will act as his assistant. Other members of the household may be called on to do some assisting with the project at location 1. *It is agreed that Melissa has final authority and say about the amount of, or type of nudity or (semi-nudity) on the set.* It is at Melissa's option to do lower or upper body nudity if she wishes for lingerie, boudoir, or art shots at location 1 or location 2.

*Id.* (emphasis added). Thus, both Deane and Riccio gave written permission for Krukowski to conduct modeling sessions with Deane, including specific permission for the sessions to include seminude posing by Deane.[4]

Krukowski made arrangements with a photographer, Paul Duckett ("Duckett"), to have several photographic sessions with Deane. Duckett had Deane sign several "model release" forms, which clearly indicate that Deane is a minor, and therefore Riccio also signed each form in the space provided. Krukowski and Duckett's sessions with Deane took place on January 5, 13, 20 and 26, 1994, either in the cellar of Krukowski's condominium or at Riccio's home. During the first session, at his condominium, Krukowski made a videotape of Deane while Duckett took still photographs. Riccio was present at all but one of the sessions, and apparently was fairly active in making suggestions as to what clothing and lingerie Deane should wear.[5]

The photographs and videotape submitted to the court show that Deane posed for Krukowski and Duckett dressed in various clothing and lingerie and also posed semi-nude. Many of the approximately 200 photographs submitted to the court are not in controversy as they were not the subject of the state's prosecution of Krukowski—for example, photographs of Deane in street clothes and close-up photographs of her face. As to the photographs in controversy here, one series shows Deane sitting on the floor wearing jeans, with her knees up and with no shirt or bra on. These photographs show the side view of her right breast.[6] Another series of photographs shows Deane lying on her stomach on her mother's bed, wearing no shirt, and with her right breast partially exposed.

---

4. Moreover, although the opinions in the related state criminal proceedings raise a question as to the degree to which Deane was an enthusiastic participant in her modeling sessions, *see State v. Krukowski*, No. CR 1954245S, 1996 WL 92209, at *5 (Conn.Super.Ct. Feb.16, 1996) (Deane "reported that at times she was forced to participate in the photo sessions by ... Riccio who threatened to burn her portfolio if she did not complete her commitment with Krukowski"), there is no indication in the record in this case that Krukowski was aware that Deane had any general reservations about being a participant in the sessions.

5. The court notes that both Riccio and Duckett were prosecuted under Connecticut's risk of injury statute along with Krukowski. *See State v. Riccio*, No. CR 1954247S, 1996 WL 92214 (Conn.Super.Ct. Feb.16, 1996); *State v. Duckett*,

No. CR 1954246S, 1996 WL 92212 (Conn.Super.Ct. Feb.16, 1996).

6. Duckett referred to this as the "Calvin Klein pose" because he was trying to duplicate one of that fashion designer's widely circulated advertisements with this pose. A copy of the advertisement in question is in evidence. *See* Notice Re: Exhibits for Preliminary Injunction Hearing. The model's pose in the advertisement is marginally more revealing than is Deane's pose in Duckett's photograph. The court notes that at some point Calvin Klein advertising campaigns involving young models were a subject of controversy, but there is no indication that the controversy led to a prosecution. *See, e.g.,* Wendy Bounds, *An Aspiring Model at 15: Will Her Age Come Between Her and a Calvin Klein Ad?*, Wall St. J., Oct. 12, 1995, at B1.

Numerous other photographs present Deane lying on her mother's bed or in Krukowski's studio wearing her mother's skimpy lingerie. Finally, several photographs show Deane: (i) standing, wearing an unbuttoned silk shirt and panties; (ii) wearing an open fur coat; and (iii) wearing a fishnet outfit through which her breasts and buttocks are visible.

In addition to the photographs described above, the state's prosecution of Krukowski focused on his statements to Deane and his comments and conduct in making the videotape of Deane. The videotape shows Deane modeling bikini bathing suits, her mother's lingerie and other clothing. Having reviewed the videotape, the court is satisfied with the accuracy of the following partial description offered by the state court before which Krukowski was prosecuted:

> During the video Krukowski can be heard to tell [Deane] to "seduce the Camera," to "act Sexy," to "Run your hand over your body and entice me like you want to ..." In this video Krukowski zooms in to show close up shots of [Deane]'s breasts and genital area. Krukowski asks [Deane] in the video if she shaves her legs and questions her "What about up around ... ? You do a lot of trimming up top?" In this questioning he was referring to the public area. The court observed that at one point in the video while [Deane] is clad in lingerie, Krukowski can be heard telling her to take her jacket off and "don't be afraid." [Deane] can be seen to hesitate and to state that she is nervous.

*State v. Krukowski*, 1996 WL 92209, at *4.

Approximately two days after the videotaping session, Deane, accompanied by Riccio, returned to Krukowski's condominium to receive an evaluation on how she did in the videotape. The plaintiff prepared a four-page typewritten evaluation based, in part, on the videotaping session. The evaluation contains numerous sections, including one that reviews Deane's pre-existing portfolio and another that discusses the self-image projected by Deane. Under the heading entitled "Modeling ability", Krukowski com-

ments on Deane's potential in the various types of modeling enumerated in the "Models Bio–Data Form", discussed above. These comments reflect the special concerns that exist in the conduct of lingerie and semi-nude modeling involving minor models. For example, under "Lingerie" Krukowski writes:

> This is your strongest area that I have seen so far. The biggest problem in this is your age. Very strict control of shoot situations will be required for this. Most of the work will be for Photographer's personal portfolios until you turn 18. You can expect that I will review with you what will be acceptable and not in this field of modeling. Custom model releases will be required for each shoot as well as strict control of materials. You have the ability to control the situation and you must be [in] full control until you turn 18 ... You have a strong ability to do well in this field when you come of age.

*See* Notice Re: Exhibits for Preliminary Injunction Hearing.

Under the heading "Semi nude", Krukowski suggested that Deane try a test session focusing on upper body nudity.[7] *See id.* He emphasized that doing this type of modeling is "strictly marketing work" and "not meant as flaunting your body". *Id.* Krukowski also cautioned that, to succeed in this area, Deane would need to feel comfortable in the studio environment, with others present, while being nude or semi-nude. *See id.* In the "Summary" portion of his evaluation of Deane, Krukowski wrote:

> I feel that you do have potential for modeling and that at this point in time you need to work on self confidence[,] facial expressions and toning your body. You are much stronger in sexually geared modeling and a[n] emphas[i]s should be put on other modeling now because of your age.

*Id.*

Within a day or so of the first photographic session, Duckett called a college professor about the photographs and asked for the professor's opinion. Duckett claims that he

---

7. Deane had not yet posed semi-nude for Krukowski and Duckett at the time that the evaluation was written.

was given advice on certain limitations on the use of the photographs, but that it was alright to take them. He was also told not to use sexual type props and to have the proper releases signed. Duckett turned his back to Deane when she changed her pose or clothing. The record is silent as to whether Krukowski likewise turned his back to Deane.

Deane's modeling sessions with Krukowski and Duckett came to the attention of the Vernon Connecticut Police Department on January 31, 1994, when Detective Donald Skewes met with a Juvenile Court Advocate concerning Deane, who had run away from Vernon and was located in Cape Cod, Massachusetts.[8] Deane had told a Massachusetts juvenile official about the modeling sessions with Krukowski and Duckett.

## B. *Connecticut's Risk of Injury to Minors Statute and the Charges Against the Plaintiff*

Krukowski was prosecuted under the first part of Connecticut's risk of injury to a minor statute, Conn. Gen.Stat. § 53–21, which provides as follows:

Any person who ... wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child [shall be guilty of a felony].

Conn. Gen.Stat. § 53–21 (Supp.1997).[9]

In particular, Krukowski was prosecuted under that portion of the statute which proscribes "wilfully or unlawfully caus[ing] or permit[ting] any child under the age of sixteen years to be placed in such a situation that ... the health of such child is likely to be injured or the morals of such child are likely to be impaired ..."[10] The Supreme Court of Connecticut has described this

clause as criminalizing "deliberate indifference to, acquiescence in, or the creation of situations inimical to the [child's] moral or physical welfare". *State v. Pickering,* 180 Conn. 54, 64, 428 A.2d 322 (1980). Under this clause, "it is not necessary to have any touching of any part of the body" for a violation to occur; rather, "the creation of a prohibited situation is sufficient." *State v. Perruccio,* 192 Conn. 154, 159–60, 471 A.2d 632, *appeal dismissed,* 469 U.S. 801, 105 S.Ct. 55, 83 L.Ed.2d 6 (1984).

The state's Substitute Information, dated August 19, 1996, specifically charged Krukowski with the following conduct:

(1) "videotaping the victim in lingerie and/or semi-nude and ... making suggestive and sexual in nature comments" to the victim (First Count);

(2) "assisting and aiding in photographing the victim in lingerie and/or semi-nude" on four occasions (Second through Fifth Counts); and

(3) "making sexually suggestive statements to the victim regarding a potential relationship between [Krukowski] and [the victim]" (Sixth Count).

The Sixth Count of the Substitute Information was based on a purported conversation between Krukowski and Deane during January 1994, wherein Krukowski stated to Deane that although they have a strictly professional relationship, he was attracted to her, and that if he was not married, and if she did not have a boyfriend, they could have a personal relationship together.

It is undisputed that all charges against Krukowski were dismissed by the Connecticut Superior Court on or about September 5, 1996, although the reason for the dismissal is not in the record. Defendant Swords (through her agent) publicly stated at that time that she would prosecute the plaintiff again if he were to engage in similar modeling sessions with minor models. The plain-

---

8. Skewes had spoken to Riccio three days earlier, when Riccio had reported Deane as a runaway.

9. Although § 53–21 was amended in 1995, this portion of the statute has remained substantially unchanged.

10. Krukowski was *not* charged with either endangering the "life and limb" of a minor or doing "any act" likely to impair the health or morals of a child. Accordingly, this ruling does not address the constitutionality of these portions of the statute.

tiff asserts that he desires to continue his modeling business, including representing minor models, but is in great fear of arrest and prosecution if he does so.

## II. DISCUSSION

### A. Overview

In the present action, Krukowski challenges Connecticut's risk of injury statute, both in its application to him and on its face, as violating the First and Fourteenth Amendments to the United States Constitution.[11] Under the banner of the First Amendment, Krukowski claims: (i) that § 53–21 is unconstitutional in its application to pure speech and to non-obscene, non-pornographic modeling sessions with consenting minor models, and (ii) that the statute is facially overbroad, in that it burdens a substantial amount of speech and expressive activity. Krukowski similarly argues that § 53–21 is invalid, both (i) on its face and (ii) as applied, under to the due process doctrine of vagueness.

For the reasons discussed below, the court finds the plaintiff's First Amendment challenges to § 53–21 to be unavailing. The court is likewise unpersuaded by the plaintiff's facial vagueness argument. However, with respect to the plaintiff's as-applied vagueness challenge, the court concludes that Connecticut's risk of injury statute, as construed by the state courts, fails to provide adequate notice that it proscribes the activity for which Krukowski was arrested and prosecuted. Accordingly—in the absence of an authoritative judicial construction extending the statute to such conduct—future application of the statute to similar conduct would violate the dictates of constitutional due process, and the court will enjoin such future application.

### B. First Amendment Challenges to § 53–21

The First Amendment to the United States Constitution provides that "Congress shall make no law ... abridging the freedom of speech, or of the press ..." The Four-

teenth Amendment makes this limitation applicable to the states, see Gitlow v. People of State of New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925), and to their political subdivisions, see Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938). In this case, the plaintiff's initial challenge to Connecticut's risk of injury statute asserts that, as applied to him, the statute violates the First Amendment.

Because the court will refer, in the following discussion, to the parties' arguments as to this claim, it would be helpful to first briefly set forth their respective contentions. Krukowski argues that his speech and conduct targeted by the state for criminal prosecution are forms of protected expression under the First Amendment. Moreover, he charges that defendant Swords' own "puritanical sense of decency" provides the impetus for such past (and future) prosecution. Plaintiff's Surreply to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Defendant's Opposition to Plaintiff's Cross–Motion for Summary Judgment [doc. # 43] at 6 ("Plaintiff's Surreply Memorandum"). Krukowski thus contends that Connecticut's risk of injury statute constitutes "an unconstitutional attempt to regulate the content of [his] speech and expression." Id. at 6.

The plaintiff argues further that First Amendment protections apply fully to the expressive component of photographic sessions with a consenting fifteen-year old model who appears partially clothed and in provocative poses. Focusing on the content of the images memorialized in the videotape and photographs of Deane, he emphasizes that "this case is not about obscene material or child pornography", Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of His Cross–Motion for Summary Judgment [doc. # 41] at 3 ("Plaintiff's Memo") (emphasis in original), and, thus, does not present a situation in which the state may, consistent with the First Amendment, impose content-based restrictions on "pure speech and artistic expression", Memo-

---

11. Unless otherwise indicated, all references to § 53–21 in this ruling refer to the "place in a situation" clause under which Krukowski was charged.

randum in Support of Plaintiff's Motion for Preliminary Injunction [doc. # 4] at 30 ("Preliminary Injunction Memo"). The plaintiff asserts that "none of the photographs and videotape ... were even sexually explicit, let alone obscene." *Id.* at 14.[12]

The defendants respond that "the state's allegations under § 53–21 did not cover the contents of the photographs and videotapes themselves, but rather the plaintiff's creation of a likely injurious situation through his conduct that accompanied the videotaping and assisting in the photographing of a minor." Memorandum of Law in Support of Defendant Swords' Motion for Summary Judgment [doc. # 30] at 9–10 ("Defendants' Memo"). "In addition," the defendants argue "because the speech and non-speech elements of [Krukowski's] activity created a situation which was, as a whole, colored by eroticism, degrading to a minor, and integral to the commission of a valid crime, the First Amendment furnished no protection for the expressive component of the plaintiff's conduct." *Id.* at 11.

### 1. *First Amendment Challenge to § 53–21 As Applied*

A First Amendment analysis of § 53–21's application to the plaintiff begins with a recognition of the fact that Krukowski was arrested and prosecuted for engaging in a course of conduct that contained elements of speech and/or expressive activity. For example, the First Count of the state's Substitute Information charged Krukowski, in part, with "making suggestive and sexual in nature comments to [Deane]"—clearly a "pure speech" activity. Likewise, the Sixth Count targets statements that Krukowski made to Deane. Moreover, the conduct cited in Counts Two through Five, charging Krukowski with "assisting and aiding in photographing the victim", may also be characterized as expressive activity entitled to First Amendment protections. *See, e.g., Hurley v. Irish–American Gay, Lesbian and Bisexual Group*

*of Boston,* 515 U.S. 557, 569, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) ("the Constitution looks beyond written or spoken words as mediums of expression"); *Massachusetts v. Oakes,* 491 U.S. 576, 591–92, 109 S.Ct. 2633, 105 L.Ed.2d 493 (1989) ("Photography, painting, and other two-dimensional forms of artistic reproduction ... are plainly expressive activities that ordinarily qualify for First Amendment protection.") (Brennan, J., dissenting); *Bery v. City of New York,* 97 F.3d 689, 695 (2d Cir.1996) ("Visual art is as wide ranging in its depiction of ideas, concepts and emotions as any book, treatise, pamphlet or other writing, and is similarly entitled to full First Amendment protection."); *cert. denied,* —— U.S. ——, 117 S.Ct. 2408, 138 L.Ed.2d 174 (1997).

Under these circumstances, the appropriate framework for analyzing the constitutionality of § 53–21 is that set forth by the Supreme Court in *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989):

We must first determine whether [the plaintiff's activity] constituted expressive conduct, permitting him to invoke the First Amendment in challenging [his threatened future arrest and prosecution]. *See, e.g., Spence v. Washington,* 418 U.S. 405, 409–411, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974). If his conduct was expressive, we next decide whether the State's regulation is related to the suppression of free expression. *See, e.g., United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); *Spence,* 418 U.S. at 414, n. 8, 94 S.Ct. 2727. If the State's regulation is not related to expression, then the less stringent standard we announced in *United States v. O'Brien* for regulations of noncommunicative conduct controls. *See O'Brien,* 391 U.S. at 377, 88 S.Ct. 1673. If it is, then we are outside of *O'Brien*'s test, and we must ask whether this interest justifies [the arrest and prose-

---

12. In emphasizing the constitutionally-protected nature of the photographs and videotape produced at his modeling sessions, the plaintiff relies upon cases outlining those narrowly limited classes of speech which are proscribable on the basis of their content. *E.g., Miller v. California,*

413 U.S. 15, 23–24, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) (defining obscenity); *New York v. Ferber,* 458 U.S. 747, 764–65, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (defining child pornography).

cution of the plaintiff] under a more demanding standard . . .

491 U.S. at 403, 109 S.Ct. 2533.

In this case, as noted above, the plaintiff's course of conduct contained elements of pure speech and/or expressive activity, thus permitting him to invoke the First Amendment in challenging his threatened future arrest and prosecution.

However, the court finds that § 53–21, as applied to Krukowski, is *not* related to the suppression of free expression. As the Connecticut Supreme Court noted in *State v. Payne*, 240 Conn. 766, 771, 695 A.2d 525 (1997), "[t]he general purpose of § 53–21 is to protect the physical and psychological well-being of children from the potentially harmful conduct of adults." In this case, Krukowski was not prosecuted for the content of his videotape and photographs, nor for the content of the words he spoke to Deane. Rather, the risk of injury statute was applied to him—in a *content-neutral way*—for creating a situation that the state deemed to be injurious to the health and morals of a minor.[13] It just so happened that this situation was created by the plaintiff's conducting the videotaping and photography sessions and by the plaintiff's speaking certain words.

Accordingly, because § 53–21 as applied is not related to the suppression of free expression, the statute is not to be analyzed under the strict standards applicable to regulations that impose a content-based restriction on speech.[14] Rather, the "less stringent standard" announced by the Supreme Court in *United States v. O'Brien* for regulations of noncommunicative conduct must guide this court's First Amendment analysis. *See Johnson*, 491 U.S. at 403, 109 S.Ct. 2533.

In *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), the Supreme Court held that "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *O'Brien* and its progeny enunciate a four-part test for determining the constitutional validity of statutes that impinge upon such combined speech/nonspeech activity.[15] Under this test, a government regulation is sufficiently justified if:

(1) "it is within the constitutional power of the Government";

(2) "it furthers an important or substantial governmental interest";

(3) "the governmental interest is unrelated to the suppression of free expression"; and

(4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."

*O'Brien*, 391 U.S. at 377, 88 S.Ct. 1673.[16]

**13.** A close reading of even the Sixth Count of the state's Substitute Information demonstrates that the plaintiff was prosecuted for placing Deane in an allegedly injurious situation. Specifically, the Sixth Count charges that Krukowski "did willfully and/or unlawfully cause or permit the victim . . . to be placed in a situation where said victim's health was likely to be injured or morals were likely to be impaired by making sexually suggestive statements to the victim . . ."

**14.** The strict standard under which such regulations are scrutinized requires the state to "show that its regulation is necessary to serve a compelling state interest and is narrowly drawn to achieve that end." *Simon & Schuster, Inc. v. Members of the New York State Crime Victims Bd.*, 502 U.S. 105, 117–18, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991); *see also City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) ("regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment"). Such a standard is inappli-

cable to a content-neutral statute such as § 53–21. The court agrees with the plaintiff that this case is not about obscene material or child pornography. Statutes regulating obscene material and child pornography specifically seek to suppress the *content* of such material and must be analyzed in this light.

**15.** The Supreme Court has explained that the *O'Brien* test "in the last analysis is little, if any, different from the standard applied to time, place, or manner" restrictions of speech. *Johnson*, 491 U.S. at 407, 109 S.Ct. 2533. Content-neutral "time, place, and manner" regulations "are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *City of Renton*, 475 U.S. at 47, 106 S.Ct. 925.

**16.** In *O'Brien*, the Supreme Court upheld against a First Amendment challenge the defendant's

Applying the four-part *O'Brien* test, the court finds that Connecticut's risk of injury to minors statute has been validly applied to the plaintiff as a content-neutral regulation that restricts freedom of expression only incidentally. First, § 53–21 is unquestionably within the general police power of the state of Connecticut. Second, the statute furthers an important or substantial governmental interest, *i.e.,* "to protect the physical and psychological well-being of children from the potentially harmful conduct of adults." *Payne,* 240 Conn. at 771, 695 A.2d 525. The Supreme Court has repeatedly described such an interest as "compelling". *E.g., Reno v. American Civil Liberties Union,* 521 U.S. 844, ——, 117 S.Ct. 2329, 2343, 138 L.Ed.2d 874 (1997); *Osborne v. Ohio,* 495 U.S. 103, 109, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990); *New York v. Ferber,* 458 U.S. 747, 756–57, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Third, for the reasons stated above, the court has already concluded that this interest—as manifested by the application of § 53–21 to the plaintiff—is unrelated to the suppression of free expression.

Finally, the incidental restriction imposed by § 53–21 on Krukowski's allegedly protected activities is no greater than is essential to the furtherance of the state's interest in protecting minors. By its very terms, where the statute strikes against expression, it strikes only against that expression that has the effect of making an injury to a minor likely. As noted above, here the plaintiff was prosecuted not for the content of his speech but for creating a situation which, in the state's estimation, was likely to be injurious to the health and morals of a minor. There is no indication that the arrest and prosecution of the plaintiff were tied to censorial motives

unrelated to furthering the state's interest in protecting minors. Thus, as applied to Krukowski, the court concludes that § 53–21 is a permissible content-neutral regulation under the test set forth in *United States v. O'Brien.*

### 2. First Amendment Challenge to § 53–21 on its Face

In addition to his as-applied First Amendment challenge to the risk of injury statute, the plaintiff also attacks the facial validity of the statute by invoking the First Amendment substantial overbreadth doctrine. Pursuant to this doctrine,

> an individual whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid. If the overbreadth is "substantial," the law may not be enforced against anyone, including the party before the court, until it is narrowed to reach only unprotected activity, whether by legislative action or by judicial construction or partial invalidation.

*Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 503–04, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985) (citing *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). Thus, statutes which burden a substantial amount of constitutionally-protected speech or expressive conduct may be held facially invalid, and their enforcement totally forbidden, even if they also have legitimate applications. *See, e.g., City of Houston v. Hill,* 482 U.S. 451, 459, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987).[17]

conviction for burning his Selective Service registration certificate. *See also Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 567, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (plurality opinion) (holding, pursuant to the *O'Brien* test, that enforcement of public indecency statute requiring that dancers at adult entertainment establishments wear pasties and a G-string did not violate the First Amendment); *Johnson,* 491 U.S. 397, 403, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (finding the four-step *O'Brien* analysis to be inapplicable to

flag burning statute where the only relevant state interest advanced was directly related to the suppression of expression).

17. As the Court in *Brockett* makes clear, courts will not entertain a facial overbreadth challenge "where the parties challenging the statute are those who desire to engage in protected speech that the statute purports to punish ..." 472 U.S. at 504, 105 S.Ct. 2794. If, therefore, as Krukowski argues, Krukowski's speech and/or conduct

The Supreme Court has noted that "[a]pplication of the overbreadth doctrine in this manner is, manifestly, strong medicine" and, as such, has been employed "sparingly and only as a last resort." *Broadrick,* 413 U.S. at 613, 93 S.Ct. 2908. "[T]he scope of [a] statute does not render it unconstitutional unless its overbreadth is not only 'real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" *Osborne,* 495 U.S. at 112, 110 S.Ct. 1691 (quoting *Broadrick,* 413 U.S. at 615, 93 S.Ct. 2908). "[E]ven if there are marginal applications in which a statute would infringe on First Amendment values, facial invalidation is inappropriate if the 'remainder of the statute ... covers a whole range of easily identifiable and constitutionally proscribable ... conduct ...'" *Ferber,* 458 U.S. at 770 n. 25, 102 S.Ct. 3348 (quoting U.S. *Civil Service Commission v. National Ass'n of Letter Carriers,* 413 U.S. 548, 580–581, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973)).

■ Here, the plaintiff argues that, in light of the conduct cited in the First and Sixth Counts of the Substitute Information,[18] the statute is being used to proscribe "pure speech" and, as such, is necessarily overbroad. *See* Plaintiff's Memo at 7–10 ("It is because of this application to pure speech—otherwise protected by the [C]onstitution—that the statute is overbroad."). However, contrary to the plaintiff's position, the fact that the proscriptions of a criminal statute may reach "pure speech" does *not* necessitate a finding of overbreadth. Indeed, in *Ferber,* 458 U.S. at 772, 102 S.Ct. 3348, the Court specifically held that the requirement of *substantial* overbreadth for facial invalidation of a statute is equally applicable where pure speech, as opposed to expressive conduct, is at issue. *See also Brockett,* 472 U.S. at 503 n. 12, 105 S.Ct. 2794.

■ Applying an overbreadth analysis to Connecticut's risk of injury to minors statute, the court concludes that the statute easily passes constitutional muster because the "plainly legitimate sweep" of § 53–21 dwarfs any impermissible applications. Several factors support this conclusion.

First, "overbreadth claims, if entertained at all, have been curtailed when invoked against ordinary criminal laws that are sought to be applied to protected conduct." *Broadrick,* 413 U.S. at 613, 93 S.Ct. 2908. In fact, it is well-settled that the First Amendment does not immunize even so-called pure speech activity "used as an integral part of conduct in violation of a valid criminal statute." *Ferber,* 458 U.S. at 761–62, 102 S.Ct. 3348 (quoting *Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 498, 69 S.Ct. 684, 93 L.Ed. 834 (1949)); *see also Cox v. Louisiana,* 379 U.S. 559, 563, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965).[19] Here, as noted above (*see* Part

during the modeling sessions at issue were protected by the First Amendment, then he would not be permitted to bring an overbreadth challenge to § 53–21. In such circumstances, there would be

> no want of a proper party to challenge the statute [and] no concern that an attack on the statute will be unduly delayed or protected speech discouraged. The statute may forthwith be declared invalid to the extent that it reaches too far, but otherwise left intact.

*Id.* However, given the court's conclusion that § 53–21 is a content-neutral regulation that only incidentally restricts free expression (*see* Part II.B.1, above), the court finds it appropriate to consider Krukowski's overbreadth claim.

18. As noted above, the First Count charged Krukowski, in part, with "making suggestive and sexual in nature comments" while videotaping Deane; the Sixth Count charged him with "making sexually suggestive statements to [her] regarding a potential relationship" between them.

19. In *Cox v. Louisiana,* 379 U.S. at 563, 85 S.Ct. 476, 13 L.Ed.2d 487, the Court noted the widespread application of the principle that "certain forms of conduct mixed with speech may be regulated or prohibited." 379 U.S. at 563, 85 S.Ct. 476. "The most classic of these was pointed out long ago by Mr. Justice Holmes: 'The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic.'" *Schenck v. United States,* 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 [1919]. A man may be punished for encouraging the commission of a crime, *Fox v. Washington,* 236 U.S. 273, 35 S.Ct. 383, 59 L.Ed. 573 [1915], or for uttering "fighting words," *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 [1942]. This principle has been applied to picketing and parading in labor disputes. *See Hughes v. Superior Court,* 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985 [1950] ... *Id.*

Of particular relevance here is the Connecticut Supreme Court's decision in *State v. Zarick,* 227 Conn. 207, 630 A.2d 565 (1993), *cert. denied,* 510

II.B.1), § 53–21 is a valid criminal law enacted pursuant to the general police power of the state of Connecticut. In addition, it is evident that speech or expression in the form of uttering sexually suggestive comments, making videotapes or taking photographs may, in certain circumstances, be integral to creating a situation injurious to the health and morals of a minor—*i.e.*, the illegal conduct which § 53–21 targets.

Second, the danger of overbreadth is minimized by the narrowing constructions which Connecticut's appellate courts have fixed upon the "place in a situation" clause of § 53–21. *See, e.g., Broadrick,* 413 U.S. at 613, 93 S.Ct. 2908. For example, in *State v. Zarick,* 227 Conn. 207, 220, 630 A.2d 565 (1993), *cert. denied,* 510 U.S. 1025, 114 S.Ct. 637, 126 L.Ed.2d 595 (1993), the Connecticut Supreme Court ruled that, while "in certain circumstances photographing naked or partially naked children can be a violation" of § 53–21, there is no *"per se* rule that such action is always a violation." *See also State v. Erzen,* 29 Conn.App. 591, 596, 617 A.2d 177 (1992) (emphasizing criminal defendant's "pattern of lewd and sexual conduct" in finding proper the application of § 53–21).

Particularly in light of the enforcement history of the "place in a situation" clause, the court concurs with the defendants that "[t]his provision primarily and legitimately sweeps against conduct, not speech, which creates a situation that poses a likely danger to the health and morals of children." Defendants' Memo at 8. *See, e.g., State v. Delgado,* 243 Conn. 523, 535, 707 A.2d 1 (1998) (defendant convicted for failing to take action to protect child from physical abuse by another person); *Payne,* 240 Conn. at 778, 695 A.2d 525 (1997) (defendant convicted for using threats to force a child to expose private parts in a public place and to urinate into a cup); *State v. Cutro,* 37 Conn.App. 534, 536–37, 657 A.2d 239 (1995) (defendant convicted for masturbating in his automobile in shopping mall parking lot within sight of 14–year-

old girl); *Erzen,* 29 Conn.App. at 595–96, 617 A.2d 177 (defendant convicted for luring 8–year old victims into secluded area, asking them to unzip his pants, exposing himself to them and touching his penis in front of them); *State v. Tirado,* 21 Conn.App. 449, 455, 574 A.2d 252 (defendant convicted for "continuing course of sexual conduct", including kissing, exposing himself to minor, and requesting that she engage in sexual contact), *cert. denied,* 215 Conn. 816, 576 A.2d 546 (1990); *State v. Mancinone,* 15 Conn. App. 251, 256, 545 A.2d 1131 (1988) (defendant convicted for engaging in sexual activity with minor and providing minor with alcohol and illegal drugs).

Finally, the court rejects the plaintiff's overbreadth claim because Krukowski has failed to meet his burden of showing that, even if § 53–21 may validly be applied to the plaintiff and others, "it nevertheless is so broad that it 'may inhibit the constitutionally protected speech of third parties.' " *New York State Club Association, Inc. v. City of New York,* 487 U.S. 1, 11, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988) (quoting Members of *City Council of City Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 798, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)). Outside of specific references to the way in which § 53–21 was enforced against him personally, Krukowski has failed to provide any indication of the degree to which the statute burdens arguably protected speech and expressive activity. Thus, he has made no showing that the statute burdens a *substantial* amount of such conduct, such that the court could find "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the [c]ourt." *Id.* at 11, 108 S.Ct. 2225.

## C. *Due Process Challenges to § 53–21*

The second constitutional provision the plaintiff relies upon in challenging § 53–21 is the due process clause of the Fourteenth Amendment. Krukowski argues that Con-

U.S. 1025, 114 S.Ct. 637, 126 L.Ed.2d 595 (1993), in which the court was faced with a First Amendment challenge to a § 53–21 prosecution based on the making of photographs which depicted, *inter alia,* breasts and genitalia of children, as well as naked boys and girls in sexually

explicit positions and poses. In the Connecticut Supreme Court's view, "[s]uch material is not protected by the [F]irst [A]mendment", as it "memorialized situations created by the defendant that were likely to impair the health or morals of children." 227 Conn. at 220, 630 A.2d 565.

necticut's risk of injury statute violates the "basic principle" inherent in the notion of due process that "an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

■ "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). The vagueness doctrine "incorporates notions of fair notice or warning." *Smith v. Goguen*, 415 U.S. 566, 572, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). "Moreover, it requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent 'arbitrary and discriminatory enforcement.'" *Id.* at 572–73, 94 S.Ct. 1242. In *Grayned*, the Supreme Court specified the values protected by the prohibition against vague laws:

> First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

408 U.S. at 108–09, 92 S.Ct. 2294 (internal footnotes omitted).

The Supreme Court has further emphasized that these standards should not be "mechanically applied." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). "The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Id.* For example, the Court has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* at 498–99, 102 S.Ct. 1186. Moreover, "perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Id.* at 499, 102 S.Ct. 1186; *see also Smith*, 415 U.S. at 573, 94 S.Ct. 1242 ("Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts.").

Here, Krukowski alleges that § 53–21 is void for vagueness on its face, because it provides unbridled discretion to law enforcement personnel to arrest individuals for exercising their right to free speech. In addition, Krukowski argues that § 53–21 violates due process as applied to the facts of his case, because it fails to provide notice that it proscribes non-obscene, non-pornographic modeling sessions with consenting minor models. Although the court rejects the plaintiff's facial vagueness claim, it finds persuasive his argument that the statutory text, in combination with the judicial gloss placed upon it by the Connecticut courts, does not permit § 53–21 to be applied to the plaintiff on the facts of this case.

### 1. *Facial Vagueness Challenge to § 53–21*

■ Because it focuses upon the degree to which § 53–21 is capable of reaching constitutionally-protected expression, Krukowski's facial vagueness claim is logically related to his overbreadth claim. *See Kolender*, 461 U.S. at 358 n. 8, 103 S.Ct. 1855 ("[W]e have traditionally viewed vagueness and overbreadth as logically related and similar doctrines"). As with First Amendment overbreadth challenges, courts will entertain facial vagueness claims if the statute at issue

reaches "a substantial amount of constitutionally protected conduct." *Id.* However, even if it does not, a plaintiff may still mount a facial vagueness challenge. But to succeed in such cases "the complainant must demonstrate that the law is impermissibly vague in all of its applications." *Village of Hoffman Estates,* 455 U.S. at 497, 102 S.Ct. 1186; *see also United States v. Amer,* 110 F.3d 873, 878 (2d Cir.1997).

In this case, Krukowski has failed to show that § 53–21 burdens a substantial amount of protected speech and expressive activity. *See* Part II.B.2 (above). Thus, under the Fourteenth Amendment's due process clause, he can be successful with his facial vagueness challenge only by showing that the statute "simply has no core"—*i.e.,* that it lacks "any ascertainable standard for inclusion and exclusion". *Smith,* 415 U.S. at 578, 94 S.Ct. 1242; *see also Village of Hoffman Estates,* 455 U.S. at 495 n. 7, 102 S.Ct. 1186; *State v. Indrisano,* 228 Conn. 795, 808, 640 A.2d 986 (1994).

Although "we can never expect mathematical certainty" from the language employed in legislative enactments, *Grayned,* 408 U.S. at 110, 92 S.Ct. 2294, the text of Connecticut's risk of injury statute is unusually indefinite for a penal law. The court concurs with the conclusion of the Connecticut Supreme Court in *State v. Schriver,* 207 Conn. 456, 462, 542 A.2d 686 (1988), that, on its face, § 53–21 offends due process in that it "fails to manifest minimal guidelines by which innocent acts can be objectively and foreseeably distinguished from conduct that violates the statute."

The court recognizes that this case involves the "place in a situation" clause of § 53–21, whereas *Schriver* involved that portion of the statute which proscribes doing "any act likely to impair the health or morals of [a minor]." The court recognizes further that there is a clear separation between these two parts. However, the significance of this separation was outlined by the Connecticut Supreme Court in *State v. Payne:*

> Although both parts of the statute are intended to protect children from predatory and potentially harmful conduct of adults, the two parts nonetheless are directed at different kinds of harm to children. This court ruled in *Schriver* that the second part, which prohibits "acts" likely to injure the health or morals of a child, was limited to protecting the bodily integrity of a child. Thus, '[t]o have violated the statute … the defendant had to have committed acts directly perpetrated on the person of a [child] …' [*Schriver,* 207 Conn. at 467, 542 A.2d 686]. By contrast, the first part of § 53–21 prohibits the wilful creation of a 'situation' likely to impair the health [or morals] of a child and thus encompasses the protection of the body as well as the safety and security of the environment in which the child exists, and for which the adult is responsible. *Id.* The plain language of the first part of § 53–21 indicates the legislature's understanding that there is a broad class of intentional conduct that can put a child's well-being seriously at risk without any physical contact by the perpetrator.

240 Conn. at 774, 695 A.2d 525. Thus, although there are distinctions between the two parts of § 53–21, these distinctions have nothing to do with, and have no effect on, the interpretation of, the concept of conduct "likely to impair the health or morals" of a child, which is present in both parts of § 53–21.

The constitutional infirmity of the language "likely to impair the health or morals" of a child was specifically addressed by the court in *Schriver.* It noted that this statutory language

> would seem to authorize police officers and jurors to determine culpability subjectively, on an *ad hoc* basis. Rather than providing objective certainty, this phrase … invites jurors to base criminal liability on their own moral predilections and personal predictions of likely harm. Similar statutes have been found violative of due process in other jurisdictions. *E.g., Morrison v. State Board of Education,* 1 Cal.3d 214, 220–36, 461 P.2d 375, 82 Cal.Rptr. 175 (1969) (a statute authorizing the revocation of teaching certificates for "immoral conduct"); *State v. Vallery,* 212 La. 1095, 1098–99, 34 So.2d 329 (1948) (a statute that criminalized the act of enticing or permit-

ting a minor to perform an "immoral" act); *Ex parte Jackson*, 45 Ark. 158, 164 (1885) (a statute making it a misdemeanor to "commit any act injurious to the public health or public morals ... ").

207 Conn. at 462, 542 A.2d 686.

Accordingly, though it dealt explicitly only with the "doing any act" clause of § 53–21, *Schriver* provides compelling support for the conclusion that the statute's "place in a situation" clause likewise "fails to manifest minimal guidelines by which innocent acts can be objectively and foreseeably distinguished from conduct that violates the statute." *Id.*

 However, it is axiomatic that "[t]he judgment of federal courts as to the vagueness or not of a state statute must be made in the light of prior state [court] constructions of the statute." *Wainwright v. Stone*, 414 U.S. 21, 22, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973) (per curiam); *see also Rose v. Locke*, 423 U.S. 48, 50, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975) (per curiam); *Dombrowski v. Pfister*, 380 U.S. 479, 490–91, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Here, assuming that § 53–21 is unconstitutionally vague as enacted, it is nonetheless saved from facial invalidity by prior decisions of the Connecticut courts which lend an authoritative gloss to the "potentially limitless language of the statute". *Schriver*, 207 Conn. at 468, 542 A.2d 686. As Krukowski himself acknowledges, *see* Preliminary Injunction Memo at 27, in a series of cases discussing the permissible application of the "place in a situation" clause in § 53–21, the Connecticut courts have articulated a core area of prohibited conduct. These cases give fair warning that certain conduct may result in arrest and prosecution under § 53–21, *see, e.g., Payne*, 240 Conn. at 778, 695 A.2d 525; *Cutro*, 37 Conn.App. at 536–37, 657 A.2d 239; *Erzen*, 29 Conn.App. at 595–96, 617 A.2d 177; *Tirado*, 21 Conn.App. at 455, 574 A.2d 252; *Mancinone*, 15 Conn.App. at 256, 545 A.2d 1131, and this means that the statute is not impermissibly vague in all of its applications.[20] Accordingly, the court concludes that Krukowski should not prevail on his claim that § 53–21 is void for vagueness on its face.

### 2. *Vagueness Challenge to § 53–21 As Applied*

In the absence of a showing that the risk of injury statute is impermissibly vague in all of its applications, Krukowski can prevail with his due process challenge only by showing that the law is impermissibly vague as applied to the activities in which he actually engaged. Thus, Krukowski must demonstrate that a reasonable person would not have foreseen that the statute would be applied to his conduct, or that he was the victim of arbitrary enforcement practices. *See, e.g., Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 740, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970) (a statute is fatally vague "when it exposes a potential actor to some risk or detriment without giving him fair warning of the nature of the proscribed conduct"); *United States v. Freeman*, 808 F.2d 1290, 1292 (8th Cir.1987), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 697; *Indrisano*, 228 Conn. at 813, 640 A.2d 986.

 Here, Krukowski asserts that neither the text of § 53–21, nor any judicial gloss applied to that text, provided fair notice that his actions were prohibited. In support of this position, he argues that the statute's enforcement history has never encompassed "situations" in the form of semi-nude and otherwise provocative modeling sessions with a fifteen-year old model who participates voluntarily and with the consent of a parent. *See* Plaintiff's Memo at 13; Preliminary Injunction Memo at 29. The defendants argue in response that "the vagueness issue presented here does not concern whether the facts of this case are literally similar to those of cases adjudicated by Connecticut courts under the risk of injury statute, but rather whether the situation here is sufficiently erotic or lewd to risk a minor's morality so that the statute provides warning that the creator of the situation is subject to punishment." Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Defendant's Opposition to Plaintiff's Cross–Motion for Summary Judgment [doc. # 42] at 8. The court does not read the Connecticut decisions as broadly as

---

**20.** The material facts of the cited cases are summarized in Part II.B.2 (above).

do the defendants; rather, it agrees with Krukowski that the judicial gloss that has been placed on § 53–21 does not afford adequate notice that his past (and intended future) conduct is forbidden by law.

■ To begin with, where as here a statute imposes criminal penalties, the standard of certainty for application of the statute is higher. *Kolender*, 461 U.S. at 358 n. 8, 103 S.Ct. 1855. Moreover, the fact that the Connecticut Supreme Court has held that § 53–21 is on its face unconstitutionally vague (as discussed in Part II.C.1, above) suggests that the exercise of caution is appropriate before extending the statute's reach beyond the confines of settled judicial interpretation.[21] As that court noted in *State v. Schriver*, 207 Conn. at 462, 542 A.2d 686:

> Clearly, the constitutionality of § 53–21 depends upon a determination of the extent to which prior decisions of this court have supplied sufficient guidelines to save the statute from its facial invalidity.

207 Conn. at 462, 542 A.2d 686. With these strictures in mind, the court turns to a survey of the relevant case law under the "place in a situation" clause of § 53–21.

This survey reveals, first, as noted above, that there is no *per se* rule that photographing naked or partially naked children is a statutory violation. *Zarick*, 227 Conn. at 220, 630 A.2d 565. Those cases where prosecutions have been permitted for such conduct are distinguishable from the present case in significant ways. For example, *State v. Hauck*, 172 Conn. 140, 141–42, 374 A.2d 150 (1976), affirmed the conviction of a junior high school teacher who took nude and semi-nude photographs of the victim after promising to give her a passing grade in his science class. In addition, on one occasion, the teacher touched the private parts of the vic-

tim. The *Zarick* case, 227 Conn. at 213, 630 A.2d 565, involved the making of photographs which depicted the breasts and genitalia of children, as well as naked boys and girls in sexually explicit positions and poses. The opinion in that case also makes reference to the fact that model release forms, props, a pair of handcuffs and a pornographic book were found by police on the premises of the accused individual. *Id.* at 214 & n. 6, 630 A.2d 565. *State v. Manluccia*, 2 Conn.App. 333, 334–35, 478 A.2d 1035, *cert. denied*, 194 Conn. 806, 482 A.2d 711 (1984), affirmed the conviction of an individual who took nude photographs a 13-year old boy, including frontal nudity and photographs of the victim in a state of sexual arousal. The course of conduct charged by the state in *Manluccia* also included making sexually suggestive comments and attempted sexual assault of the victim. Finally, in *State v. Palangio*, 24 Conn.App. 300, 301, 588 A.2d 644, *cert. denied*, 218 Conn. 911, 591 A.2d 813 (1991), the court affirmed a conviction for taking photographs of three minor victims "in provocative poses in various stages of undress and in differing types of clothing and undergarments," and for having the victims photograph the accused nude or semi-nude.[22]

Each of these cases is distinguishable from the present case in ways the court finds significant. In particular, each involved convictions for the creation of child pornography,[23] *e.g., Zarick*, 227 Conn. at 213, 630 A.2d 565; *Manluccia*, 2 Conn.App. at 334–35, 478 A.2d 1035, and/or for sexually explicit *physical* conduct by the accused, *e.g., Palangio*, 24 Conn.App. at 301, 588 A.2d 644 (having the victims photograph the accused nude and semi-nude). Neither of these characterizations apply to Krukowski's conduct or words with respect to Deane. Moreover, unlike the instant case, none of these earlier applica-

---

**21.** "For the purpose of determining whether a state statute is too vague and indefinite to constitute valid legislation we must take the statute as though it read precisely as the highest court of the State has interpreted it." *Wainwright v. Stone*, 414 U.S. at 22–23, 94 S.Ct. 190, 38 L.Ed.2d 179 (internal quotation marks omitted).

**22.** It is not clear whether the state proceeded under § 53–21's "place in situation" clause in *Hauck* and *Manluccia*. The court nonetheless

finds these cases pertinent to considering whether Krukowski had fair warning that his conduct was unlawful.

**23.** The court uses the term child pornography as defined in *Ferber*, 458 U.S. at 764–65, 102 S.Ct. 3348 ("works that visually depict sexual conduct by children below a specified age", including actual or simulated sexual intercourse, masturbation or lewd exhibition of the genitals).

tions of § 53–21 involved the consent of the victim *and* a parent. Indeed, *Hauck* and *Manluccia* involved courses of conduct by the accused that may be described as threatening or coercive to the victim. Nor does it appear that any of the victims in these cases were as old as fifteen years.[24] Finally, none of these cases involved activity by the accused that could even remotely be considered legitimate. On the other hand, engaging in non-pornographic fashion modeling sessions may reasonably be considered a legitimate activity.

Further supporting his contention that he did not have fair notice that his conduct was in violation of § 53–21, Krukowski has submitted evidence to the court that the types of visual images created in his modeling sessions were not unprecedented in the realm of mass market advertising, entertainment and other artistic endeavor. For example, the plaintiff put in the record a copy of the Calvin Klein advertisement that the participants were trying to duplicate with one of the semi-nude poses used in Deane's modeling sessions. In addition, the plaintiff put into evidence two books of photography, purchased in or around Vernon, Connecticut at general circulation bookstores. One of these books contains photographs of fully nude adults and children, including adolescent girls and boys; the other contains photographs of fully nude adolescent girls, some of which purport to show the beginnings of the girls' awareness of their sexuality. *See* Pl's Exh. 1 ("Radiant Identities", photographs by Jock Sturges); Pl's Exh. 2 ("The Age of Innocence", photographs by David Hamilton).[25] The plaintiff also put into evidence a 1978 film entitled "Pretty Baby", which includes fully nude shots of a twelve-year old actress, that was purchased at a video store in or around Vernon, Connecticut. *See* Pl's Exh. 3. The plaintiff makes a valid point with respect to this evidence; namely, that the

presence and apparent acceptance of such material in his community could affect a modeling agent's view as to the acceptable and legitimate limits of his business. This only serves to underscore the practical necessity for the requirement that the prohibitions under our criminal laws be clearly defined.

"Due process requires that all 'be informed as to what the State commands or forbids,' and that 'men of common intelligence' not be forced to guess at the meaning of the criminal law." *Smith*, 415 U.S. at 574, 94 S.Ct. 1242 (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939) and *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). Given the inherent vagueness of § 53–21, due process demands that the conduct proscribed by this statute be clearly defined in authoritative judicial constructions by Connecticut courts. *See Dombrowski*, 380 U.S. at 490–91, 85 S.Ct. 1116. To date, no authoritative judicial gloss has been placed on § 53–21 which would bring the plaintiff's conduct within the scope of that statute with sufficient certainty. It is not the province of this court to provide that gloss. Moreover, as a unanimous Connecticut Supreme Court noted in *Schriver*:

> Without the aid of prior decisions to lend an authoritative gloss to the potentially limitless language of the statute, any effort to conform § 53–21 to the mandate of due process would necessarily entail a wholesale redrafting of the statute. We decline to undertake this activity, which is within the exclusive province of the legislature.

207 Conn. at 468, 542 A.2d 686.

In simple terms then, Krukowski is entitled to the relief he seeks here because no appropriate authority has given him fair warning that his conduct is proscribed under Connecticut law. We have at issue here a

---

**24.** As the plaintiff points out, Connecticut penal law deems children who have reached the age of fifteen to be capable of consenting to sexual contact short of intercourse. *See* Conn. Gen. Stat. § 53a–73a. In the court's view, this further strengthens his argument that he was and is not on notice that the proscriptions of § 53–21 encompass "situations" in the form of semi-nude modeling sessions with a fifteen-year old model

who participates voluntarily and with the consent of a parent.

**25.** According to testimony offered by and on behalf of the plaintiff, there is no restriction on who can purchase these books, which have been openly carried in the art section of these local bookstores, without any warnings or opaque covering.

statute the Connecticut Supreme Court found to be unconstitutionally vague on its face. In specific situations, however, the Connecticut Supreme Court has found the statute was "saved" from its facial invalidity because the conduct or action forming the basis for a particular prosecution was within the core area of prohibited conduct articulated by prior state judicial decisions. Krukowski's conduct at issue here is not within that core area of prohibited conduct. No matter how sincere and well intentioned they may be, the members of the Vernon Police Department and state prosecutors cannot expand that core area of prohibited conduct. Doing so is beyond the ambit of their authority under our system of laws. In fact, doing so is also beyond the ambit of the authority of this court. In the first instance, the authority to decide whether conduct such as that at issue here should be prohibited rests with the Connecticut legislature, which is required under law to provide explicit standards and guidelines in its penal code. In the absence of such explicit standards and guidelines provided by the legislature, it is only in certain limited situations—namely, where well-settled interpretations of Connecticut state courts make clear that certain conduct is within the core area of prohibitive conduct—that the statute may constitutionally be applied. In this regard, the views of members of the Vernon Police Department, the views of State prosecutors, and even the views of this court, as to the effect of Krukowski's conduct on the health or morals of a fifteen-year old girl do not count.

Accordingly, the court holds that—because there is an absence of authoritative judicial construction extending § 53–21 to the conduct for which Krukowski was arrested and prosecuted—future application of the statute to similar conduct would violate the dictates of constitutional due process. By "similar conduct" the court refers to engaging in non-obscene, non-pornographic modeling sessions with a fifteen-year old model who partici-

pates voluntarily and with the consent of a parent, and in a context devoid of any allegations of sexually explicit physical conduct by the accused. The court will enjoin such future application of the statute unless and until the Connecticut courts decisively construe § 53–21 to reach conduct of this nature.[26]

### III. *CONCLUSION*

For the foregoing reasons, the defendants' motion for summary judgment [doc. # 29] is hereby DENIED, and the plaintiff's motion for summary judgment [doc. # 40] is hereby GRANTED.

Judgment shall enter in favor of the plaintiff as to Count Two of the Amended Complaint, and an appropriate order shall be issued forthwith.

It is so ordered.

---

**26.** The injunctive relief awarded the plaintiff pursuant to this decision is appropriate due to: (i) the state's threat that it would prosecute the plaintiff in the future if he were to engage in modeling sessions with minor models similar to that he conducted with Deane; and (ii) the plaintiff's stated desire to continue to engage in such sessions. *See Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (to be entitled to an equitable remedy, plaintiff must demonstrate a "sufficient likelihood that he will again be wronged in a similar way").